UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| TARA KRULL | CIVIL ACTION NO. 10-CV-1807 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CENTURYTEL, INC. | MAG. JUDGE JAMES D. KIRK |

RULING

Pending before the Court is Defendant CenturyTel, Inc.'s ("CenturyTel") Motion for Summary Judgment. [Doc. No. 23]. Plaintiff Tara Krull ("Krull") filed a Memorandum in Opposition to CenturyTel's Motion for Summary Judgment. [Doc. No. 27].

For the following reasons, CenturyTel's motion is GRANTED IN PART and DENIED IN PART.

I.  BACKGROUND

This case concerns Krull's allegations that CentruyTel discriminated against her based on her gender and pregnancy.

Krull began working with CenturyTel on September 2, 2008. During her tenure with CenturyTel, Krull held two managerial positions in marketing.

On March 9, 2009, Krull gave birth to a daughter. She began her maternity leave on that day and remained on leave through May 13, 2009. During this same period, CenturyTel's parent corporation was in the process of merging with Embarq Corporation, and Krull's working group underwent a selection process for positions in the new company. When Krull returned from her maternity leave, she learned of the hiring decisions.

During her leave, Krull's supervisors reassigned Krull's former job to the regional offices and placed Krull in a new marketing position. In her new position, Krull remained in roughly the same place within the corporate hierarchy and received the same compensation.[1] Krull, however, alleges that the new position did not include any clear responsibilities or goals. While her prior position focused on developing marketing plans, Krull's new job required her to merely "execute and do creative and do flyers and door hangers." [Doc. No. 23-4, p. 19].

Although many of the new positions were filled before Krull returned from maternity leave, Krull sought placement in the remaining positions. Krull states that in July 2009, she approached Pat Glavin, one of her supervisors, about an opening in the position immediately above her. Glavin initially responded by complimenting her, but he refused to consider her for the position, stating "You don't get people like you down in Monroe, Louisiana, who have as much telecom experience and advertising agency experience that you do with a Master's degree from Northwestern University . . . . But you've got a lot of personal distractions right now; you have a new baby at home, and I don't think you have the fire in you to be one of my leaders." [Doc. No. 23-4, p. 46].

Instead of Krull, Glavin hired Spencer Lange ("Lange") in September 2009, a father whose wife was expecting twins. Krull alleges that Lange was substantially less qualified than her for the position. When Krull confronted Glavin about Lange's lesser qualifications for the position, Glavin allegedly reiterated that she did not "have the fire to get this done right now . . . and you've got a lot going on personally." [Doc. No. 106].

---

[1] After the merger, CenturyTel adopted a different ranking system that does not directly correlate with the prior system. Krull reported to a different supervisor after the merger, but her new supervisor was on the same "tier" level as her prior supervisor.

In a separate conversation about the position, Krull told Glavin that he "can't hold it against me, the fact that I have a small child at home." Glavin allegedly reiterated his prior statements about Krull having "a lot going on" and further stated that "you're going to need to leave the office from time to time to go for your four-month baby check and your six-month baby check; but besides that, we're here to get a job done and I need you to be here." [Doc. No. 23-4, pp. 54-55]. Later, in October or November 2009, Glavin allegedly said, "I need young kids around here; I don't think [a certain job candidate] can handle it; this place is a heart attack; I don't think she can handle this . . . . [I] need people who are young, right out of college, who are available night and day . . . . I've got three ladies sitting in this room with very young babies at home who I can't rely on to be at the office when I need them to be; so I need kids in here that don't have personal responsibilities at home who can get the job done. [Doc. No. 28, p. 6]. Glavin also allegedly told Krull that she should not attend a meeting in Houston and that she should babysit the junior office staff instead. [Doc. No, 28, p. 6].

In addition to Glavin's alleged statements, Krull alleges that a male co-worker repeatedly made statements to the effect that the women in the office needed to leave work at 5 P.M. to pick up their children from daycare.

According to Krull, she became a "receptacle of jobs no one else wanted" and became overloaded with assignments. [Doc. No. 27, 4]. Rather than addressing Krull's concerns or providing her with guidance, Krull alleges that her new supervisor, Lange, placed her on a Performance Improvement Plan. This Plan is a document that details Krull's shortcomings and offers guidelines for improvement. Krull alleges that the PIP's goals for her positions were

unattainable, and the Plan was designed to force her resignation. In its closing line, the Plan notes that failure to meet its requirements may result in termination.

Krull resigned from CenturyTel on July 6, 2010. She started working for Sears in Illinois on July 26, 2010. In her deposition, Krull explains that she was interviewing for jobs in Illinois during her tenure at CenturyTel because her husband was having difficulty finding employment in Monroe. Although she received a job offer from Sears just prior to resigning at CenturyTel, Krull states that she did not decide to accept the job offer until she resigned from CenturyTel. Her new position pays more than her prior job at CenturyTel, and Krull states that she enjoys the work.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### III. LAW & ANALYSIS

Krull alleges that CenturyTel's actions constitute unlawful employment discrimination under LA. REV. STAT. ANN. § 23:332, which prohibits, *inter alia*, intentional discrimination based on sex, and LA. REV. STAT. ANN. § 23:342, which prohibits discrimination based on pregnancy or childbirth. Specifically, Krull claims CenturyTel maintained a work environment hostile to women and mothers and deliberately failed to promote her because of her gender and pregnancy.

CenturyTel raises a number of defenses: 1) the prescriptive period on the claims has expired; 2) Krull has not alleged facts sufficient to constitute a hostile environment claim; 3) CenturyTel's anti-discrimination procedures insulate it from liability; and 4) Krull has not suffered damages.

#### A. Prescriptive Period

CenturyTel argues that Krull's discrimination claims are prescribed under LA. REV. STAT. ANN. § 23:303 (D), which provides a one-year prescriptive period for any cause of action under Chapter 23. LA. REV. STAT. ANN. § 23:303(D) (2011). Krull argues that her claims are not prescribed because CenturyTel's actions were "part of a single unlawful employment practice that defendant perpetrated and that culminated in her unlawful termination." [Doc. No. 27, p. 2].

As to Krull's failure to promote claim, the prescriptive period has expired. The

prescription period for discrete acts begins to run on the day the act occurred. *AMTRAK v. Morgan*, 536 U.S. 101, 110 (2002) ("A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'").[2] Krull first learned of the hiring decisions when she returned from maternity leave on May 13, 2009. [Doc. No. 23-4, pp. 29-30]. The limited information she gathered at that time may not have provided Krull with sufficient notice of the discrimination to start the prescriptive period. *See, e.g.*, *Jordan v. Employee Transfer Corp.*, 509 So. 2d 420, 423-24 (La. 1987) (ruling that a prescription period does not begin to run until a plaintiff reasonably should know she has a claim against a specific defendant).

Krull, however, was sufficiently on notice by September 2009. According to her deposition, Glavin told her that she was not receiving a certain position because she did not "have the fire to get [the job] done right now" and she had "a lot going on personally." [Doc. No. 23-4, 52]. Krull interpreted these statements to mean that CenturyTel did not promote her because she was a female and because she had a young child. [Doc. No. 23-4, 52]. Additionally, Spencer Lange began work in his position supervising Krull by this period. Since this is more than one year prior to the date Krull filed this suit, Krull's failure to promote claim is prescribed.[3] Therefore, CenturyTel's Motion for Summary Judgment as to Krull's failure to promote claim is GRANTED.

---

[2]Louisiana's employment discrimination prohibitions parallel federal provisions. Therefore, courts frequently use interpretations of federal statutes to guide interpretation of the state statutes. *Mayes v. Office Depot, Inc.*, 292 F. Supp. 2d 878, 889 (W.D. La. 2003) (citing *LaBove v. Raftery*, 00,1394 (La. 11/28/01)).

[3]In her affidavit, Krull states that she was aware of some discrimination by as early as August 1, 2009. [Doc. No. 23-4, p. 64]. Since CenturyTel's later decisions not to promote Krull could form discrete incidents sufficient for independent causes of actions, the Court focuses on the last of these incidents.

The prescriptive period, however, has not expired on Krull's hostile environment claim. In assessing a hostile environment claim, courts view all the acts contributing to the hostile environment as a single "unlawful employment practice." *Morgan*, 536 U.S. at 117. The prescriptive period begins to run from the date of the last act that contributed to the hostile environment. *Id*. ("It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.").

Here, the final action allegedly contributing to the hostile work environment occurred on July 1, 2010. On that date, Krull's supervisor presented her with a Performance Improvement Plan, an action Krull alleges was designed to push her out of CenturyTel. [Doc. No. 27-2, p. 2]. This Performance Improvement Plan details a number of Krull's alleged shortcomings, including lack of communication, lack of organization, and failure to appropriately manage her expenses. [Doc. No. 23-11, p. 1]. The plan calls for Krull's reassignment into a different division within CenturyTel and notes that Krull's failure to address the enumerated problems could result in her termination. Since the Performance Improvement Plan was presented to Krull well within a year of this suit's filing date, Krull's hostile environment claim has not prescribed.

**B.     Hostile Environment Claim**

CenturyTel argues that Krull's allegations are insufficient to establish a hostile environment claim. To establish a hostile work environment claim, a plaintiff must demonstrate: 1) she belonged to a protected group; 2) she was subjected to unwelcome harassment; 3) the harassment was motivated by discriminatory animus; 4) the harassment affected a term,

condition, or privilege of employment; 5) the employer knew or should have known of the harassment and failed to take proper remedial action. *Hicks v. Central Louisiana Electrical Co.*, 97-1232, p. 5 (La. App. 1 Cir. 1998). In Louisiana, an employee who alleges that the hostile work environment resulted in her constructive discharge must show that the "working conditions [are] so intolerable that a reasonable employee would feel compelled to resign." *Mayes*, 292 F. Supp. 2d at 894 (citing *Faruki v. Parsons*, 123 F.3d 315, 319 (5th Cir. 1997)).

Whether a reasonable employee would have felt compelled to resign depends on the facts of each case. *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994). Krull alleges that because of her gender and pregnancy CenturyTel did not consider her for promotions, positioned a less-qualified supervisor above her, assigned excessive work to her, relocated her into a new position without sufficiently defined responsibilities, placed her on a Performance Improvement Plan that deliberately mischaracterized her past job performance and threatened her with termination, and subjected her to numerous derogatory statements about her pregnancy and gender.

While these allegations may be insufficient individually to form a cause of action against CenturyTel, in the aggregate they are sufficient to raise a material issue of fact for trial whether a reasonable employee would have felt compelled to resign. *See Morgan*, 536 U.S. at 115 ("The [hostile environment] therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own."). Therefore, CenturyTel's motion for summary judgment on the basis that Krull's allegations are insufficient to rise to the level of a hostile environment is DENIED.

C.      *Faragher/Ellerth* Affirmative Defense

Next, CenturyTel argues that Krull's claims should be dismissed because she "failed to fulfill her obligation to use reasonable care to avoid alleged discrimination by failing to use any complaint procedure provided by CenturyTel." [Doc. No. 23-2, p. 18]. In support of this defense, CenturyTel emphasizes that it repeatedly notified Krull of its anti-discrimination policy and procedures for dealing with complaints. Further, CenturyTel states that Krull only claims to have notified the company of the discrimination through an informal conversation with an employee in the human resources department.

The so-called *Faragher/Ellerth* defense is available if 1) the employer exercised reasonable care to prevent and promptly correct any harassment, and 2) the complaining employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

The defense, however, is not available when the discrimination results in a "tangible employment action." *Ellerth*, 524 U.S. at 760. As the Supreme Court has explained, a tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 761.

Not every action by a supervisor constitutes a tangible employment action. As the Fifth Circuit has noted, "'[t]angible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act." *See Butler v. Ysleta Indep. Sch. Dist.*,

161 F.3d 263, 268 (5th Cir. 1998) (quoting *Ellerth*, 524 U.S. at 762)). When a supervisor takes such an action, the action by the supervisor becomes the action of the employer. *See Ellerth*, 524 U.S. at 761.

The Fifth Circuit consistently rules that plaintiffs have not suffered a tangible employment action when they fail to offer evidence that their supervisors' discrimination resulted in objectively less desirable reassignments or reassignments with significantly different responsibilities. *See, e.g.*, *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 772 (5th Cir. 2009) (ruling that a reassignment did not constitute a tangible employment action because the plaintiff retained her same salary, and her actual duties remained the same); *La Day v. Catalyst Technology, Inc.*, 302 F.3d 474, 482 (5th Cir. 2002) (ruling that a plaintiff did not offer sufficient evidence of a tangible employment action because the plaintiff did not specify to which position his supervisor should have promoted him); *Williams v. Barnhill's Buffet, Inc.*, 290 Fed. Appx. 759, 762 (5th Cir. 2008) (ruling that requiring a restaurant server to wash the walls where the servers dumped food did not constitute a tangible employment action because the server's duties already included some janitorial work); *Chester v. Vinson Guard Serv.*, No. 2:10-CV-412 (PHM) 2011 U.S. Dist. LEXIS 75922, at * 24-25 (W.D. La. 2011) (ruling that a reassignment to a different shift does not suffice as a tangible employment action).

CenturyTel argues that Krull has not suffered a tangible employment action. Specifically, CenturyTel characterizes the Performance Improvement Plan as a typical performance review, which courts consider insufficient to constitute a tangible employment action. *See Chelette v. State Farm Mutual Auto. Ins. Co.*, 2006 WL 2513918, at *11 (W.D. La. 2006) (ruling that a negative review coupled with a less-than-expected salary increase did not amount to a tangible

employment action).

Here, Krull's allegations against CenturyTel are sufficient to constitute a tangible employment action. Although the Performance Improvement Plan may not constitute an official action, Krull's constructive discharge claim encompasses her reassignment following the merger with Embarq. Soon after her return from maternity leave, Krull claims that her supervisors placed her in a new position that focused on "creative and [doing] flyers and door hangers" instead of developing marketing plans. [Doc. No. 23-4, p. 19]. Krull also claims that her new position came without achievable goals. Krull alleges this placement resulted in the negative performance review and her constructive discharge. Assuming for purposes of summary judgment that Krull's allegations are true, this reassignment constitutes a tangible employment action because such a reassignment is both objectively undesirable and substantially changed Krull's employment responsibilities.

Since the Court finds that Krull has raised a genuine issue of material fact whether her reassignment constituted a tangible employment action, CenturyTel is not entitled to summary judgment on the *Faragher/Ellerth* defense. In making this determination, the Court views the alleged facts in the light most favorable to Krull. Here, this requires accepting that Krull's new position included significantly different responsibilities or was objectively undesirable. At trial, the jury must find that one of these two allegations is true. If the jury finds that Krull failed to prove either of these allegations, then the jury can consider CenturyTel's evidence on this defense.

Even if Krull did not suffer a tangible employment decision, CenturyTel is not entitled to summary judgment under *Faragher/Ellerth* because there is a genuine issue of material fact on

both prongs. As CenturyTel correctly emphasizes, "an employer may satisfy the first prong by demonstrating it had an anti-harassment policy which it promulgated to employees and properly implemented and that, if an employee makes a complaint under that policy, the employer conducts a prompt investigation." [Doc. No. 23-2, p. 14] (quoting *Williams v. Admin. Review Bd.*, 376 F.3d 471, 478-79 (5th Cir. 2004). The remedial steps taken by the employer "must be 'reasonably calculated' to end the harassment." *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir.1999) (quoting *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir.1986)).

As to the second prong, *Faragher* instructs "[i]f the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if the damages could reasonably have been mitigated, no award against a liable employer should reward a plaintiff for what her own efforts could have avoided." 524 U.S. at 807.

Here, CenturyTel has not proven that when an employee makes a complaint under its anti-discrimination policy, it promptly acts to investigate the claim and end any discrimination. CenturyTel has offered excerpts from its handbooks and an email detailing its anti-discrimination policy and procedures. This evidence does not demonstrate that when CenturyTel employees report discrimination, CenturyTel actually takes prompt action calculated to end the discrimination. Therefore, CenturyTel has not carried its burden under the first prong of *Faragher/Ellerth*.

Since CenturyTel has not met its burden under the first prong, this Court need not address the second prong. Nonetheless, Krull appears to have complied with CenturyTel's procedure for reporting discrimination. CenturyTel's Corporate Compliance Handbook provides, "If you

believe that you have been harassed, witness or suspect any violation of this [anti-discrimination] policy, you may report the matter to your supervisor, manager or to the next level of management." [Doc. No. 23-2, p. 16]. Krull claims that one of her supervisors told her that he was not selecting her for a promotion because she "had a lot going on personally and had a new baby at home." [Doc. No. 23-4, p. 53]. In response, Krull said, "You can't hold it against me, the fact that I have a small child at home." [Doc. No. 23-4, p. 53].

Krull also spoke with a representative from human resources at a social event and told her that she "had concerns about how staffing decisions were being made." [Doc. No. 23-4, p. 56]. Krull requested a formal meeting with the HR representative, but was unable to schedule one at that time because of the represenative's busy schedule. [Doc. No. 23-4, p. 55]. Soon thereafter, the HR employee passed away, and Krull did not seek another meeting with an HR representative. [Doc. No. 23-4, p. 55]. Therefore, for all of these reasons, CenturyTel's Motion for Summary Judgment under the *Faragher/Ellerth* affirmative defense is DENIED.

        **D.**      **Lack of Damages and Failure to Mitigate**

Last, CenturyTel argues that Krull's claims should be dismissed because she has not demonstrated proof of actual injury. CenturyTel emphasizes that Krull accepted a different job the day after she resigned, with higher compensation than her position with CenturyTel. In response, Krull argues that CenturyTel's discrimination forced her to relocate her family from Monroe to Illinois and caused her to suffer embarrassment, humiliation, emotional distress, and mental anguish.

LA. REV. STAT. ANN. § 23:303(A) provides that a discrimination plaintiff has standing to recover "compensatory damages, back pay, benefits, reinstatement, or if appropriate, front pay,

reasonable attorney fees, and court costs." As the Louisiana Court of Appeals has noted, compensatory damages require proof of an "actual injury." *Hanley v. Doctors Hosp. of Shreveport*, 35, 527, p. 33 (La.App. 2 Cir. 6/6/02) (citing *Carey v. Piphus*, 435 U.S. 247 (1977)). Although plaintiffs may recover for mental and emotional distress, these plaintiffs must demonstrate that such injuries actually occurred. *Carey*, 435 U.S. at 264.

In Louisiana, this burden of proof may be satisfied by lay testimony, *Hanley*, pp. 33-34, and a plaintiff may rely solely on her testimony to prove the injury. *Carey*, 435 U.S. at 938. The plaintiff, however, must offer evidence demonstrating the "nature and extent of the harm." *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927. 938 (5th Cir. 1996). Merely alleging "hurt feelings, anger and frustration" does not meet this specificity requirement. *Id*. at 940.

Krull has offered sufficient evidence of damages to survive summary judgment. In her opposition memorandum, Krull states that she "obviously suffered embarrassment, humiliation, emotional distress, and mental anguish." [Doc. No. 27, p. 8]. Additionally, Krull alleges that she was forced to relocate her family and risk being unhappy in her new position. To recover at trial for her mental and emotional distress, Krull will need to offer evidence sufficiently demonstrating the nature and extent of her injury. *See Price v. City of Charlotte*, 93 F.3d 1241 (4th Cir. 1996) (discussing at length the evidence needed to support compensatory damages for emotional distress).

CenturyTel also argues that Krull did not satisfy her "duty to mitigate damages which encompasses remaining on the job even when the employer discriminatorily denies a promotion to the employee." [Doc. No. 23-2, p. 19]. In support, CenturyTel cites *Mayes*, 292 F.Supp. 2d. at 895. The *Mayes* case merely indicates that where a plaintiff alleges a discriminatory denial of

14

promotion, such a plaintiff may not exacerbate her damages by leaving her current position. *See Mayes*, 292 F. Supp at 895 ("Even if the denial of promotion was discriminatory, it is not 'a harbinger of [her] dismissal.' Moreover, where an employer discriminatorily denies a promotion to an employee, that employee's duty to mitigate damages encompasses remaining on the job.") (internal citations omitted.) The Court has dismissed Krull's failure to promote claim, and CenturyTel's argument has no relevance to Krull's hostile environment claim.

Therefore, CenturyTel's Motion for Summary Judgment based on Krull's damages and failure to mitigate is DENIED.

**IV.    CONCLUSION**

For the foregoing reasons, CenturyTel's Motion for Summary Judgment [Doc. No. 23] is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED as to Krull's failure to promote claim, and this claim is DISMISSED WITH PREJUDICE.  The motion is otherwise DENIED, and Krull's other claims remain pending for trial.

MONROE, LOUISIANA, this 2nd day of November, 2011.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE